Released under Bob Gore. Good morning. May it please the court, my name is Jennifer Schwartz and I represent the appellant, Trang Hoang. I would like to reserve three minutes for rebuttal, please. The issue in this case is whether the district court sentence was procedurally unreasonable because it failed to hold the government to its burden of proof regarding the sentencing enhancement and incorrectly applied the sentencing guidelines by calculating the infringement amount of the counterfeit goods by reference to the retail value of the goods if genuine rather than the retail value. Can I ask you a preliminary question? Is your client out? She is out. She's currently serving four months of home detention, but she is out of prison. Okay. And so you feel the home detention is affected by this also? I believe that it is, yes. Does she have, did she just get the sentence, does she have any period of subsequent supervision or is the home detention a condition of her supervision? She was sentenced to four months of incarceration plus two years of supervised release. She still got supervised release after her home detention? Yes, the four months of home detention are part of the two years of supervised release, but she will have to finish that off as well. We believe that the sentence in this case should be vacated and the case remanded for a new sentencing at which the government should not be permitted to submit new evidence with regard to the infringement amount. The basic facts of this case, Ms. Hwang and her co-defendant were selling counterfeit handbags from the back room of a nail salon where they both worked. There were also some counterfeit bags that were seized from the home that the two of them shared. So there were two separate seizures. Ms. Hwang did admit ultimately that she knew that these items were counterfeit, but one of the reasons she knew that they were counterfeit was because the price of them was so low in comparison to the price of genuine items of a similar nature. She stipulated to the base offense level, which was eight, but reserved the right to contest any enhancement based upon the value of the items. The probation report adopted the government's valuation, which provided an increase of six levels based on a valuation of the items if genuine. At sentencing, Ms. Hwang objected to that both prior to the sentencing in a pre-sentence memorandum, objections to the pre-sentence report, and again at sentencing. At the sentencing hearing itself, the government offered no evidence to indicate that a reasonably informed purchaser would find these items, would mistake these items for the genuine items, which is one of eight enumerated circumstances in which it is proper to use the retail value of the genuine items. It does look at the items and make that decision? Well, the items were not available in the courtroom. As part of our sentencing memorandum, I submitted pictures of many of the items, which I believed showed the deficiencies, crooked stitching, missing labels, broken zippers, things of that nature. Also submitted as part of the sentencing memorandum were the affidavits and verifications from the manufacturers, which detailed all of the reasons that these items were in fact counterfeit. They mentioned several of these same things, that the quality was just not up to par, that there was crooked stitching, that there were, I think, missing serial numbers. I had also pointed out words were misspelled in the little patches that go on the purses that detail some of the information. So the judge had that information. The manufacturers had also discussed that many of these items weren't even copies of genuine items. So they weren't similar to anything that they manufactured. They were simply purses that had had a trademark label. How were those priced, the ones that weren't similar? Well, the pricing evidence, agents purchased three of the purses, one that was allegedly a coach, one that was a Burberry, and one, I think, a Louis Vuitton. Those were purchased for $50 each for two of them and $30 for the other one. So $130 for those three bags. The government's expert determined that the retail value of those bags, if genuine, was approximately $2,130, something in that range. My question is, how did they price items that did not have a genuine counterpart? The manufacturers? I'm not sure of the exact process they used, but they stated in the verifications that the items, if genuine, or genuine items of, I suppose, a similar nature, would be worth X amount of dollars. So the evidentiary record, so to speak, that you created was the affidavits and the photographs. Well, I didn't create the affidavits. The affidavits were given to me by the government. But you submitted them. I submitted them, correct. Part of your evidentiary record. Yes. And whatever you had submitted, it would still have been the government's burden of proof, which it would have had to satisfy by the presentation of evidence, given your objection. Correct. Again, there are eight circumstances enumerated in Application Note 2 to Sentencing Guideline 2B5.3. And the eight situations in which the retail value of the genuine items is applied in determining the infringement amount are generally those situations in which a one-to-one correlation exists between the sale of the infringing items and the displaced sale of a legitimate item. And the comments to the history of that guideline section indicate that in a situation such as this, where you have inferior quality items being sold out of the backroom of a nail salon or a flea market, was the example that they used, that there's clearly not a one-to-one correlation. Because the people buying a Louis Vuitton bag for $50 out of the backroom of a nail salon are not people that would go into one of the retail stores where they're typically sold and pay $2,000 or whatever price that bag is, that it's just not the same market, and therefore you don't have that one-to-one correlation. But might not it have effect on a prospective sale to someone who might buy, who decides, you know what, there's so many knockoffs around, I think I'm going to buy something else? I don't know the answer to that. But I don't think this is a situation where there's that one-to-one correlation. There might be an individual person here or there who makes that decision, but it certainly isn't the case that for every $50 bag purchased, that's a $1,500 bag that wasn't purchased. And that's, I think, the situation that the guideline— How many items were there? There were 120 purses and 43 wallets. One of the things that the district court relied— The purses were sort of in the back of a nail salon or in a bathroom or a— They were— They weren't in exactly a showroom-type setting. No. The evidence from the government agents from their reports was that they had gone to a nail salon, asked about purses. This was in the pre-sentence report because there wasn't any evidence presented at the sentencing hearing. Well, I had submitted the reports of the agents as an exhibit to the sentencing memorandum. So that was also evidence. Yes. So when the agents went into the store and asked about purses, they were taken to this back room of the salon. Now, it wasn't described exactly, but it was a separate room. There were some pictures that the government provided that showed the bags hanging on the walls. In a couple of instances, you could see the price tags. Well, you know, I don't mean to interrupt you, but, I mean, in a way, you could look at this case as though the government failed to submit any evidence. You could also look at it as though the government attempted to rely on the evidence you submitted, and then there's an issue as to whether—I mean, if the government didn't have anything else to submit, there would be an issue as to whether it was permissible, based on that record, for the district court to find that the retail value of the genuine items should be used, which is another way to describe the issue, I guess. Yes, and I would submit that under either situation, there was insufficient evidence in the record for the court to find that a reasonably informed purchaser would be mistaken into believing that these were genuine items. Well, I guess I'll ask the government about this, but the government seems to sort of gloss over the fact that there is an exception to the use of the retail value of the genuine items that arguably applies here. But I think a better position for the government would be the one I just outlined for them. So the genuine items were all found in her home, right? That is my understanding. Now, there was no evidence in the record regarding that. The reports talk about items being seized from two different places. At the sentencing hearing, there was some discussion about that, and the U.S. attorney turned to the agent and asked him a question. The agent never testified. And then Mr. Kern told the court that all of the items were kept together. I disputed that because there clearly were two seizures, one from the home and one from the nail salon, and it was my understanding from my client, and I told the judge this, that the genuine items were seized from the home and that those were not items offered for sale, and so that there was no confusion simply from having the items mixed in. That's a somewhat important point, isn't it? Because one of the findings the district judge made here was that he was going to use the retail value to determine the loss because there was genuine merchandise mixed with the counterfeit, which had the effect of confusing or misleading a prospective purchaser. I think that is a very important point, and my point is that there is no evidence in the record, you know, that really confirms where they were found, whether they were together or whether they were not. And so on a preponderance— That finding is without evidentiary basis. Correct. There is no evidence in the record to support the fact that they were intermingled. And so I think— Was that the government's argument as opposed to evidence, or was it just not mentioned? It's not really—it wasn't really clear to me. But, you know, in most of the cases and every other case I reviewed in which the reasonably informed purchaser exception was used, there was testimony generally from an agent, but sometimes from somebody else involved in the case that the items were indistinguishable, and there was nothing of that nature in this case. And so we believe that the sentence should be vacated and sent back. Thank you. Good morning, Your Honors. May it please the Court, I'm Robert Kern, and I represent the United States in this matter. Mr. Kern, could I ask you a question right off the bat? Let's start where we just left off. Is there any evidentiary record to support the district judge's finding here that there were genuine items mixed with the counterfeit items? I think that it's probably a little foggy, to be honest. I was looking at the transcript as counsel was answering Judge Gibbons' question, and the only place that it comes up is where the district court asked, talking about the genuine ones that were mixed in, he asked the ones that were later found to be genuine, were they kept with the other bags or were they kept separate from the other bags? And my response to him, after consulting with the agent who was at counsel table with me, I said, according to the agent, Your Honor, they were all together. Well, that's not evidence. No, and I agree, but Judge Greer was asking where that was in the transcript. That's the only part at the sentencing transcript where that's discussed. I thought that Ms. Schwartz said that she told the judge that her understanding was that the genuine items were found at home, not the nail salon. So it appears we might have . . . if she's right, it seems like you'd have competing statements of counsel but no evidence on the point. Your Honor, I would submit that the only evidence would be either my response to the court's question . . . Well, your response is not evidence. Okay. Well, the only thing in the record . . . I stand corrected. I apologize, Your Honor. The only thing in the record would be my answer, I believe, in the brief, the sentencing memo that Ms. Schwartz filed. There may have been some reference. I don't recall because I didn't . . . I just don't know for sure. But there's certainly no testimony with regard to where they were. Well, you know, part of me reacts to this case as sort of saying, what assistant U.S. attorney doesn't know that when there is an objection of this type on the part of the defendant that the government then bears the burden of proof by preponderance of the evidence? I mean, there was some evidence to support the defendant's position and the government had to make the finding on an evidentiary record that you had carried your burden. And I just don't see . . . I mean, so it's tempting just to say the case kind of begins and ends with the government's failure to carry its burden of proof because what's in the record does seem to support the application of the exception to the use of the retail value of the genuine items. Well, Your Honor, several things. One, with regards to establishing what the value, if the items were genuine, as far as the starting point went, the parties stipulated in the factual basis for the plea agreement that if these items were genuine, this is what . . . But that doesn't get you where you need to be in terms of this issue. And then when the sentencing memorandum was filed by the defendant, basically the same things, except for a live witness, the same things that we would have put into evidence at a sentencing hearing, the reports, the substance of the reports from Homeland Security, the ICE reports, the verifications from the trademark holders. Those were already in the record. So you would rely on the defendant's evidence, which is what I said during the defense argument, to support your position? I would rely on the fact . . . whether it's her evidence or whether it's hers . . . Well, it's evidence she presented. Evidence that she presented. It becomes her evidence when she's the one that offers it to the court, I think. I mean, that doesn't mean you can't use it if you think it carries your burden of proof. But was it clear to me that that was exactly the argument you made? Well, if it certainly . . . regardless of who presents it, I think we were entitled to rely upon that. It's before the court. It's part of the record. The verifications . . . some talk about valuation. Some do not. Some of the other items that were submitted as part of that process were the valuations from the Customs and Border Protection. When the items are seized, they do a review. Their import specialist will value the items based on their training of the trademarks. That was before the court. So it's not that the district judge just arbitrarily came up and said, well, I think it's between $30,000 and $70,000. I think there's no question. I mean, I don't think anybody's challenging the value of genuine. I think the real question is whether some or all of them should have been excluded and valued as the infringing product rather than the infringed product. And when you look at the record, there doesn't seem to be . . . I mean, these items were . . . many of them were clearly not genuine. And yet the judge said, well . . . I mean, he gave a couple of reasons. One is that they were intermingled, which we have an insufficient record on. And the second was that . . . and maybe people thought that they were just so overpriced. It's, you know, they just got them at a good price is the rest of the thought that he didn't really say. Actually, his second reason was that the value could have been so low because people just thought they were stolen merchandise. And that if they were a $1,000 bag . . . No, there's no evidence on that point. That's just what he . . . No, that was part of the . . . Well, doesn't the judge . . . I mean, is there any indication that the judge looked at the pictures and really made a judgment, not from, you know, hypothetical, but to look at the bag and an original and say, would this be mistaken? And maybe some of the bags should have been valued as genuine and some not. But to say that this whole thing of . . . I think I wrote down 120 purses and 42 wallets were all as genuine. I think . . . you know, where's the support for that? Well, actually, by the time it got to the . . . coming up with the $30,000 to $70,000 value, a number of the bags were removed from the calculation. So it wasn't necessarily 120. It was some number less than that. But your point is obviously well taken, Your Honor. Well, you know, it's pretty hard. I mean, I think we have a reasonable purchaser standard, and it's pretty hard to look at those photos. You don't even have to be conversant in the purchase of handbags that are in the price range of genuine items of this type to know that these brand names connote high quality and that the items in the pictures are not commensurate with quality that would ordinarily bear that mark. I mean, it's very obvious in many of them. Yeah, I would agree that . . . I would agree with that statement, Your Honor. The thing is that when the defendant's sentencing memo was filed, immediately prior to the hearing, before the judge took the bench, Ms. Schwartz had indicated to me that some of the pictures that were attached to the sentencing memo had been incorrectly attached. They actually represented bags that had been taken out of the calculation of the loss, and there was really no breakdown. I mean, this literally happened maybe 60 or 120 seconds before the judge took the bench. So there was no breakdown, even as between us, as to which bags are still in and which ones . . . Of what was included, you could have presented photographs of each and every bag that you wanted the court to consider. There's not any other evidence, really, that pertains to this that the district court could consider on remand, is there? Short of, I suppose, bringing 120 or whatever the number was, bags into the court and having the court go through bag by bag and determine whether or not . . . Well, it seems like . . . I mean, it seems like you had . . . It seems like everyone had every opportunity to present whatever they wanted to present on this issue. I would agree, Your Honor. It seems to me that the judge made two findings here upon which he based his ruling, one of which, you seem to admit, has no factual support. That is the one we talked about earlier with respect to whether the genuine items were commingled with the fake ones. It seems to me the other one that he made was that the minimal cost doesn't necessarily indicate that they're counterfeit because they could be stolen, et cetera. But didn't the government make a stipulation here that undercuts that a bit? Didn't you stipulate as part of the agreed facts here that the defendant knew or should have known they were counterfeit because of the minimal cost, and I guess the extension of that is, doesn't that also suggest that a reasonably informed purchaser would come to the same conclusion? That is one of the facts that's stipulated in the factual basis for the plea agreement. And honestly, Judge, I think that does . . . I think it cuts both ways. I think that it was in there as an indication as to the defendant's knowledge that they established a violation, but I think you're right. I think it cuts both ways. It also impacts us with regards to exactly what you said. Other than those two findings, is there any other factual finding that the district judge made to support his ruling here? I don't think so. The transcript is rather short. I don't recall there being anything else other than those two. No. All right. And what would the sentence range have been without this enhancement? Without the enhancement, the base level would have been 8. It would have been, I believe, a 2-level increase for the amount of loss, so it would have been at a 10 minus 2 for acceptance. So it would have been at a level 8, which was 0 to 6 months. As it were, with the 6-level enhancement, it was a 14 minus 2, and then the judge did a variance down, which roughly translated into another 2 levels. So she would have been eligible for probation? Even where she was, she was eligible for probation, but at—well, no, she would have been with a split sentence, I guess. At 0 to 6, she definitely would have been eligible for probation. No question, Your Honor, yes. Unless you have anything else, I'll waive the rest of the mic. Ms. Schwartz, you have your rebuttal. Thank you, Your Honor. I mean, just to clarify, if this matter is remanded, it would be remanded on the existing record. Do you agree with that? Based on the supplemental authority that counsel provided for the hearing, it would appear so, yes. Thank you. Just to clarify one of the last points that you were discussing with Mr. Kern, with the enhancement that the district court found to be appropriate here, that did put Ms. Swang in zone C for sentencing purposes. So she was not eligible for straight probation or even a sentence of simply— Under the guidelines. Under the guidelines, correct. She was in zone C, so the split sentence, which is what she received, was the lowest that could be given to her. Going back to another point that you had raised, Judge Greer, the cost issue, the minimal cost issue, it was our position that that was an indication that a reasonably informed purchaser would have taken into account and therefore would not have mistaken these for genuine items. Not just the cost itself, but also the location where the items were being sold, because the items, the genuine items of this nature are sold only in high-end salons, owned by the manufacturers, or in high-priced department stores, such as Saks Fifth Avenue or Nordstrom or places like that. There are no legitimate items of this nature sold at nail salons or discount stores, things like that. And that was one of the things that the manufacturers had put in their verifications, was the location. That was another factor that they had raised. So as the Court has discussed this morning, I think it's clear that there was not sufficient evidence in the record for the judge to have made the finding that the reasonably informed purchaser exception applied. Therefore, 2B of the application note should have applied, and the retail value of the counterfeit items should have been used to determine whether or not an enhancement was appropriate. And is that amount in the record? Well, the judge never determined that amount. In the sentencing memorandum that I filed, I submitted that one way in which to determine that amount was to use an average price, which I calculated to be somewhere in the neighborhood of $50 per item, apply that to all of the items. And that would have resulted in the two-level enhancement that Mr. Kern discussed, taking the amount from the 8 base level up to a 10, and then back to an 8 with acceptance of responsibility. But there were no findings made as to the retail value. Are there intermediate levels in between? Yes. Yes, it's all based on the monetary amount. So I believe there's a four-level enhancement, although I'm not sure exactly what that range is. Okay. All right. Thank you. Thank you both for your argument. We'll consider the case carefully. Thank you.